UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BROOKLYN EVENTS CENTER, LLC and
BROOKLYN NETS, LLC,

                    Plaintiffs,

-against-

MONSTER INC.,

                      Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

---

## COMPLAINT

Plaintiffs Brooklyn Events Center, LLC ("Brooklyn Arena") and Brooklyn Nets, LLC ("BKLYN," together the "Plaintiffs"), by their attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., allege as and for their complaint against the defendant Monster Inc. ("Monster" or "Defendant"), as follows:

## NATURE OF THE ACTION

1. Brooklyn Arena operates Barclays Center, one of the most popular arenas in the world that is setting a new standard as the showcase venue for the world's most thrilling entertainment and sporting events. Barclays Center hosts an extensive variety of events, including premier concerts, major professional boxing cards, top college basketball games, family shows, and the Brooklyn Nets and New York Islanders.

2. Plaintiff BKLYN operates the Brooklyn Nets, a professional basketball team competing in the National Basketball Association ("NBA") as a member club of the Atlantic Division of the Eastern Conference. The Brooklyn Nets' home arena is Barclays Center.

3. According to its own website, Monster is the "world's leading manufacturer of high performance cables that connect audio/video components for home, car and professional

use as well as computers and computer games. Monster Cable is an indispensable component for music lovers, audiophiles, recording studios, sound professionals, musicians, custom-installers and home theatre enthusiasts."

4. This lawsuit arises out of Defendant's breach of a Sponsorship Agreement by and among Plaintiffs and Monster dated March 13, 2017 (the "Agreement"), as well as Monster's infringement of Plaintiffs' intellectual property rights. Plaintiffs seek an injunction, damages, and all appropriate relief due as a result of Monster's trademark infringement, false designation of origin, and unfair competition in violation of the laws of the United States and the State of New York. In addition, Plaintiffs seek damages of at least $560,0000 arising from Defendant's breach of the Agreement, plus any damages resulting from Defendant's conduct after Plaintiffs terminated the Agreement (as described below), plus interest and attorney fees.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiffs' claims under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' federal claims as to form part of the same case or controversy. Additionally, this Court possesses subject matter jurisdiction over Plaintiffs' state common law claims pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because Monster has contractually consented to the exclusive jurisdiction of this Court in connection with enforcement of the Agreement.

7. Venue is also proper in this Court pursuant to NY CPLR § 501 because the parties consented to and submitted to the exclusive jurisdiction of this district in connection with resolving disputes in the Agreement.

## PARTIES

8. Brooklyn Arena is a Delaware limited liability company with its principal place of business at 15 MetroTech Center, 11th Floor, Brooklyn, New York, 11201.

9. BKLYN is a New Jersey limited liability company with its principal place of business at 15 MetroTech Center, 11th Floor, Brooklyn, New York, 11201.

10. Upon information and belief, Monster is a California corporation with its principal place of business at 601 Gateway Boulevard, Suite 900, South San Francisco, California 94080.

## FACTS

**Barclays Center**

11. Plaintiff Brooklyn Arena has operated Barclays Center since it opened to the public in 2012. In addition to hosting home games of the Brooklyn Nets and New York Islanders, Barclays Center hosts numerous other sports and entertainment events, including performances by numerous world-renowned artists.

12. Brooklyn Arena has a license to use the logos, words, names, nicknames, identifying slogans, symbols, emblems, identifications, and all other intellectual property of Barclays Center, including, but not limited to, the BARCLAYS CENTER word mark and the

"Barclays Center Logo" -   (together, the ("Barclays Center Trademarks")), among others, which are the subject of numerous federal trademark registrations.

**The Famous Brooklyn Nets Trademarks**

13.     Plaintiff BKLYN owns and operates the Brooklyn Nets, which was established in 1967.  It has been known by the "Nets" team name since 1968.  From 1977-2012, the team played in New Jersey as the New Jersey Nets; in the summer of 2012 the team moved to Brooklyn, New York to play at Barclays Center, and was re-named the Brooklyn Nets.

14.     BKLYN exclusively owns throughout the United States the logos, words, names, nicknames, identifying slogans, symbols, emblems, uniform designs, trade dress colors, identifications, and all other intellectual property of the Brooklyn Nets.

15.     Since at least as early as 2012, the Brooklyn Nets basketball team has been widely advertised and promoted as the "Brooklyn Nets," playing live and nationally televised basketball games, as well as advertising and selling a variety of high quality Brooklyn Nets branded merchandise, including basketball memorabilia, apparel, trading cards, and other accessories throughout the United States and the world through BKLYN, the NBA, and/or their respective licensees.  In connection with these Brooklyn Nets-related entertainment and merchandising activities, BKLYN uses various distinctive trademarks to promote its goods and services throughout the United States and the world, including, but not limited to, the BROOKLYN NETS word mark, the "Brooklyn Nets Logo" -  , the "Brooklyn B Logo" -

, and the "B Logo" - (collectively the "Brooklyn Nets Trademarks"), among others, which are the subject of numerous federal trademark registrations.

16. BKLYN and its predecessors have used the "NETS" word mark since 1968 in connection with the American Basketball Association and since 1976 in connection with the NBA. The Brooklyn Nets Trademarks have at all relevant times been owned by BKLYN and/or its predecessors.

17. The public recognition of the Brooklyn Nets Trademarks is enhanced by extensive advertising and related press coverage of the team that features the Brooklyn Nets Trademarks. Advertisements featuring the Brooklyn Nets Trademarks appear in nationally distributed publications that reach millions of people. Television and press coverage of the Brooklyn Nets team and many of the Brooklyn Nets Trademarks reach millions of consumers. The Brooklyn Nets Trademarks also are depicted on millions of dollars' worth of consumer goods sold in connection with Brooklyn Nets branded merchandising each year. Products bearing the Brooklyn Nets Trademarks are available at Barclays Center (where the Brooklyn Nets play their home games), online at the official BKLYN and NBA respective e-commerce sites, by authorized retailers on the Internet, and in sporting goods retail locations throughout the United States, including in this judicial district.

18. As a result of their exclusive and extensive use, advertisement, and promotion, the Brooklyn Nets Trademarks have acquired enormous value, goodwill, recognition, fame, and secondary meaning in the United States and throughout the world. The Brooklyn Nets

Trademarks are both distinctive and famous and are well-known to the consuming public and trade industry as exclusively and uniquely identifying and distinguishing the Brooklyn Nets as a well-known professional basketball team and its related products and services.

19. BKLYN and the NBA are vigilant and zealous in their respective efforts to protect BKLYN's valuable intellectual property. BKLYN has registered dozens of trademarks before the United States Patent and Trademark Office (the "USPTO"), including the Brooklyn Nets Trademarks, for a variety of goods and services. Attached hereto as **Exhibit A** is a chart setting forth the trademark registrations for the Brooklyn Nets Trademarks at issue. These registrations are valid and subsisting and are in full force and effect. Registration No. 1956158 for the NETS word mark has achieved incontestable status pursuant to 15 U.S.C. § 1065.

**The Agreement Generally**

20. Under the Agreement, Defendant was designated the "Official Headphone and Speaker Sponsor of the Brooklyn Nets" and was granted certain other rights (collectively, the "Entitlements"), including certain advertising, marketing and promotional entitlements in connection with the Brooklyn Nets, New York Islanders, and Barclays Center, and additional exclusive rights – in the headphone and speaker category (the "Exclusive Category") – in connection therewith. Defendant was also granted, in the Exclusive Category, a limited license, subject to the specific terms of the Agreement, to use, among others, the Brooklyn Nets' and Barclays Center tradenames and trademarks during the term of the Agreement.

21. In exchange for these valuable rights and benefits, the Agreement required Defendant to pay certain fees to Plaintiffs. Specifically, Defendant promised to pay the following annual fees:

> (a) annual fees applicable to the Barclays Center Entitlements which were due and payable by Defendant to Brooklyn Arena as follows:

      (i) applicable to the first contract year, $30,000 on or before the six (6) week anniversary of the date of the Agreement and $30,000 within 90 days of the date of the invoice issued by Brooklyn Arena;

      (ii) applicable to the second contract year, $20,000 on or before October 1, 2017, January 1, 2018, and April 1, 2018; and

      (iii) applicable to the third contract year, $20,000 on or before October 1, 2018, January 1, 2019, and April 1, 2019;

(b) annual fees applicable to the Brooklyn Nets Entitlements which were due and payable by Defendant to BKLYN as follows:

      (i) applicable to the first contract year, $75,000 on or before the six (6) week anniversary of the date of the Agreement and $75,000 within 90 days of the date of the invoice issued by BKLYN;

      (ii) applicable to the second contract year, $50,000 on or before October 1, 2017, January 1, 2018, and April 1, 2018; and

      (iii) applicable to the third contract year, $50,000 on or before October 1, 2018, January 1, 2019, and April 1, 2019; and

(c) annual fees applicable to the New York Islanders Entitlements which were due and payable by Defendant to Brooklyn Arena as follows:

      (i) applicable to the first contract year, $35,000 on or before the six (6) week anniversary of the date of the Agreement and $35,000 within 90 days of the date of the invoice issued by Brooklyn Arena;

      (ii) applicable to the second contract year, $30,000 on or before October 1, 2017, and $20,000 on or before January 1, 2018 and April 1, 2018; and

      (iii) applicable to the third contract year, $30,000 on or before October 1, 2018, and $20,000 on or before January 1, 2019 and April 1, 2019.

Defendant also agreed to pay Plaintiffs a twenty percent (20%) commission of the total net sales of products sold as a direct result of the Agreement, provided that Defendant first recoup $280,000 in a contract year, or $840,0000 in the aggregate during the term of the Agreement, in gross revenue from products sold as a direct result of the Agreement.

      22.    The term of the Agreement commenced as of March 13, 2017 and would have expired on the third anniversary thereof, unless terminated earlier in accordance with its terms.

23. Pursuant to Section i(i) of the Sponsorship Agreement, Defendant would be in default of the Agreement in the event that Defendant failed to pay any portion of the fees when due and such failure continued following written notice by Plaintiffs and a 30-day period to cure such failure. Upon a default by Defendant, Plaintiffs had the right to do any one or more of the following: (a) enforce the remedies provided for in the Agreement; (b) recover all damages provided by law or in equity; (c) exercise any other right or remedy at law or in equity, including obtaining an injunction or order of specific performance; (d) cease the provision of all or a portion of any/all of the Entitlements; and/or (e) terminate the Agreement.

**Defendant's Breach of the Agreement**

24. It is undisputed that Plaintiffs performed all of their obligations under the Agreement through the Termination Date (as defined below in paragraph 26).

25. Notwithstanding Plaintiffs' full performance of their obligations under the Agreement, Defendant had failed to make each and every payment due under the Agreement, even after Plaintiffs contacted Defendant numerous times and sent Defendant notices setting forth the overdue payments. As a result, Defendant was in arrears under the Agreement in the amount of $380,000 as of October 26, 2017 (the "Outstanding Fees").

26. As a result, on October 26, 2017 (the "Termination Date"), Plaintiffs exercised their right pursuant to Section i(i) of the Agreement and sent a termination letter (the "Termination Notice") to Defendant notifying Defendant that Plaintiffs were terminating the Agreement and demanding payment of the Outstanding Fees. Defendant never responded to the Termination Notice.

**Defendant's Post-Termination Use of Plaintiffs' Trademarks**

27. Notwithstanding Plaintiffs' termination of the Agreement, *Defendant continued to use BKLYN's intellectual property*—namely the world-famous Brooklyn Nets Trademarks—and to claim an association with Barclays Center to promote Defendant's products, including at the Consumer Electronics Show in Las Vegas, Nevada in January of 2018.

28. On January 17, 2018, Plaintiffs sent Defendant a cease and desist letter demanding that Defendant immediately cease all unauthorized use of Plaintiffs' owned and licensed intellectual property and that Defendant immediately contact Plaintiffs with written assurances that it would do so.  Defendant never responded.

29. On February 1, 2018, Plaintiffs, by their attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., sent another notice to Defendant, again demanding that Defendant immediately rectify its breach of the Agreement by paying the Outstanding Fees and immediately provide Plaintiffs with assurances that it had ceased its unauthorized use of Plaintiffs' intellectual property.  Defendant again did not respond.

30. Despite Plaintiffs' attempts, Defendant still has not paid the Outstanding Fees and has failed to comply with Plaintiffs' demands to provide assurances to Plaintiffs that it has ceased its unauthorized use of Plaintiffs' intellectual property.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

31. Plaintiffs incorporate each and every allegation contained above as if set forth fully herein.

32. Pursuant to the Agreement, Defendant agreed to pay Plaintiffs for the Entitlements in exchange for the rights to various benefits and entitlements, as detailed above.

33. Defendant's agreement to pay Plaintiffs the amount of $560,000 to date for the various benefits and entitlements Plaintiffs agreed to grant Defendant is a binding and enforceable contract, supported by valid consideration and memorialized in writing.

34. Plaintiffs at all relevant times fully performed, and breached no obligation, under the Agreement.

35. Defendant breached the agreement by failing to make any of the required payments as they became due under the Agreement.

36. Defendant agreed, pursuant to the Agreement, that any failure to make required payments would constitute a default entitling Plaintiffs to terminate the Agreement and recover all damages provided by law or in equity.

37. As a result, Plaintiffs are entitled to, at minimum: (1) all payments due to the Plaintiffs under the Agreement, due on or prior to April 1, 2018, which total $560,000; (2) any and all damages resulting from Defendant's unauthorized use of the Entitlements after Plaintiffs terminated the Agreement; and (3) any and all fees Plaintiffs might otherwise have obtained by bringing in an alternative sponsor in the Exclusive Category had it not entered into the Agreement with Defendant.

## SECOND CAUSE OF ACTION: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. § 1114(1)(a)

38. Plaintiff BKLYN incorporates each and every allegation contained above as if set forth fully herein.

39. BKLYN has developed a valid, protectable trademark right in the Brooklyn Nets Trademarks.

40. Defendant's use of the Brooklyn Nets Trademarks, without BKLYN's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a), in that, among other

things, such use is likely to cause confusion, deception, and mistake among the consuming public and trade as to the approval or sponsorship of the services and products offered by Defendant, and is likely to lead the relevant trade and public to associate Defendant and its services with Plaintiffs' businesses, products, and services.

41. Defendant committed these acts willfully and with the intention of trading upon the valuable goodwill built up by BKLYN in the Brooklyn Nets Trademarks, or otherwise injuring BKLYN.

42. Defendant's conduct jeopardizes the goodwill symbolized by the Brooklyn Nets Trademarks, has injured BKLYN in an amount to be determined at trial, and has caused and will continue to cause irreparable injury to BKLYN, for which BKLYN has no adequate remedy at law. As such, BKLYN seeks an injunction pursuant to 15 U.S.C. §1116(a), as well as damages, a disgorgement of profits, and interest and attorney's fees and costs, pursuant to 15 U.S.C. §1117(a).

## THIRD CAUSE OF ACTION:
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)

43. Plaintiff BKLYN incorporates each and every allegation contained above as if set forth fully herein.

44. Defendant's acts alleged above, including its continued use of BKLYN's intellectual property without any authorization to do so, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact, in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and in interstate trade as to the approval, affiliation, connection, association, or sponsorship of the relationship between Defendant and BKLYN, as well as the services and products offered by BKLYN.

45. Defendant committed these acts willfully and with the intention of trading upon the valuable goodwill built up by BKLYN in the Brooklyn Nets Trademarks or otherwise injuring BKLYN.

46. Defendant's conduct jeopardizes the goodwill symbolized by the Brooklyn Nets Trademarks, has injured BKLYN in an amount to be determined at trial, and has caused and will continue to cause irreparable injury to BKLYN, for which BKLYN has no adequate remedy at law.  As such, Plaintiffs seek an injunction pursuant to 15 U.S.C. §1116(a), as well as damages, a disgorgement of profits, and interest and attorney's fees and costs, pursuant to 15 U.S.C. §1117(a).

## FOURTH CAUSE OF ACTION:
## TRADEMARK INFRINGEMENT IN VIOLATION OF NEW YORK COMMON LAW

47. Plaintiff BKLYN incorporates each and every allegation contained above as if set forth fully herein.

48. BKLYN owns all right, title, and interest in and to the Brooklyn Nets Trademarks, including all common law rights in the Brooklyn Nets Trademarks.

49. Defendant has used the Brooklyn Nets Trademarks without authorization in connection with the promotion and sale of its products.  Defendant's unauthorized use of the Brooklyn Nets Trademarks is likely to cause significant consumer confusion regarding the association between BKLYN and Defendant.  Defendant willfully engaged in these acts. Accordingly, Defendant's actions constitute trademark infringement in violation of the common law of the State of New York.

50. Defendant's act of trademark infringement has injured BKLYN in an amount to be determined at trial and have caused, and if not restrained by this Court will continue to cause,

BKLYN serious and irreparable injury for which BKLYN has no adequate remedy at law. As such, BKLYN seeks an injunction, damages, and/or a disgorgement of profits.

### FIFTH CAUSE OF ACTION:
### UNFAIR COMPETITION IN VIOLATION OF NEW YORK COMMON LAW

51.     Plaintiff BKLYN incorporates each and every allegation contained above as if set forth fully herein.

52.     Defendant has palmed off its goods as being associated with or approved by BKLYN, improperly trading on BKLYN's goodwill and valuable rights in and to the Brooklyn Nets Trademarks.

53.     Defendant committed these acts willfully and in conscious disregard of BKLYN's rights. By these acts, Defendant has engaged in unfair competition. BKLYN is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter, and make an example of the Defendant.

54.     Defendant's acts of unfair competition have injured BKLYN in an amount to be determined at trial and have caused, and if not restrained by this Court will continue to cause, BKLYN serious and irreparable injury for which BKLYN has no adequate remedy at law. As such, BKLYN seeks an injunction, damages, and/or a disgorgement of profits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that a judgment be entered granting the following relief:

A.    A judgment against Defendant awarding damages to Plaintiffs of no less than $560,000, plus any damages resulting from Defendant's use of the Entitlements after Plaintiffs terminated the Agreement in an amount to be determined at trial, plus any attorney's fees, interest, expenses, and costs as allowed;

B. An injunction enjoining and restraining Defendant and its members, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them from:

1. Using the Brooklyn Nets Trademarks, or any other trademarks confusingly similar to the Brooklyn Nets Trademarks, in connection with the promotion of its services, including, but not limited to, on any signage, business cards, brochures, and/or advertising or promotional materials;

2. Advertising or promoting Defendant's services by using the Brooklyn Nets Trademarks, or any other designation confusingly similar to any of the Brooklyn Nets Trademarks, including, but not limited to use in any of Defendant's locations, on any social media sites and/or on any internet sites;

3. Holding out in any manner whatsoever, that Defendant or its services, are in any way sponsored by, associated, or affiliated with Plaintiffs;

4. Engaging in any other activity constituting unfair competition with Plaintiff BKLYN, or constituting an infringement of the Brooklyn Nets Trademarks, or of BKLYN's rights in or its rights to use or exploit such trademarks, or the reputation and the goodwill associated with the Brooklyn Nets Trademarks; and

5. Making any statement or representation whatsoever with respect to the Defendant and/or Defendant's services that falsely designates the Brooklyn Nets or Barclays Center as a sponsor or affiliate of Defendant, or that is false or misleading with respect to the Brooklyn Nets and/or Barclays Center.

C. Directing that Defendant deliver for destruction all signage, business cards, artwork, brochures, advertisements, and promotional materials bearing the Brooklyn Nets Trademarks.

D. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that Defendant is in any way affiliated or associated with Plaintiffs.

E. Awarding Plaintiffs all damages sustained by Plaintiffs as a result of Defendant's wrongful acts and directing that these damages be trebled pursuant to 15 U.S.C. § 1117.

F. Requiring that Defendant make a detailed accounting to Plaintiffs with respect to (1) its gross revenues; and (2) its total profits generated, for all transactions that occurred after October 26, 2017, including a detailed explanation of any alleged deductions to be made in the calculation of profits.

G. Requiring Defendant to account and pay over to Plaintiffs all profits realized by Defendant's wrongful acts and directing that such profits be enhanced pursuant to 15 U.S.C. § 1117.

H. Directing Defendant to pay over to Plaintiffs their costs, disbursements, and reasonable attorneys' fees, interest, and expenses.

I. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement of compliance therewith, and for the punishment of any violations thereof.

J.      That Plaintiffs be granted such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: New York, New York
April 20, 2018

                                            ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: /s/Justin E. Klein
      Justin E. Klein

875 Third Avenue
New York, New York 10022
(212) 603-0488
*Attorneys for Plaintiffs*